21-3132 United States v. Lopez. Ms. Gassman. Good afternoon. May it please the court, Kayla Gassman for the appellant Ismael Lopez. This appeal is about the government's breach of the plea agreement. The government promised to request a sentence within a specific range that was below the guidelines range. The prosecutor's only argument at sentencing was that Mr. Lopez's criminal history was underrepresented. That is the argument that breached the government's promise to request a sentence within a below guidelines range. Now, we are here. Counsel, could that argument also be that prosecution was attempting to argue that it should that the sentence should not be as low as you request? Wasn't it couldn't just be a response to your position? So I don't think so. And that is because of the specific argument that the prosecutor made. So the prosecutor argued specifically that Mr. Lopez's criminal history was underrepresented. He then went on to describe why he believed criminal history was underrepresented, focusing on unscored and violent offenses. And so and so wouldn't that be support for the sentence that the government had agreed to or proposed and and not that the court should go as low as you propose? I think what prevents that reading is the prosecutor's use of the argument that Mr. Lopez's criminal history was specifically underrepresented. That is necessarily an argument against the imposition of any downward variance. This court's case law and the guidelines themselves use the language of criminal history underrepresentation when talking about above guidelines, variances and departures. So guideline for a one point three uses the language of criminal history underrepresentation and specifically provides for an above guidelines departure based on underrepresented criminal history. And it's it's a comparative standard. Criminal history is underrepresented by what measured against what? It's an argument that criminal history is underrepresented by the guidelines range. He made the argument about the criminal history being underrepresented with it, with the criminal history number five. But the prosecutor didn't talk about the guidelines range, did he? Just said the criminal history number he he didn't, but he did reference unscored and violent criminal history. I understand, but there was no reference to the guideline range itself, correct? Correct. And there was no reference to an upward variance or upward departure, was there? There wasn't, but there was no room for an upward departure because the guidelines range was the same as the statutory maximum. And he did mention by my count three times that he was only asking for one hundred and eight months. He did, but that's what this court's decision in Kachuka is about. So that in that case, the prosecutor made the agreed upon sentence recommendation multiple times. But his actual argument argued that the guidelines range was too low and said that the guidelines range didn't make sense. And this court found a breach because the government breaches an agreement to request a specific range when the actual arguments that it makes in effect argue against that range. Well, that's what counsel in Kachuka, the government breached his promise to request a guideline sentence by arguing the guidelines were too low here. The government isn't arguing for a different guideline range or even saying the guideline range was too low. Just the criminal history number was was not representative. So I have two responses to that. One is, I think, an argument that the criminal history category is not representative of a defendant's true criminal history is an argument about the guidelines range, because it's an argument about half of the numbers that go into the ultimate guideline range. And second, that I don't think the difference between Kachuka involving a recommendation for a within guideline sentence, in this case, involving an agreement for a specific range that was below the guidelines is a distinction that matters. I think what's important is what is the range that the government agreed to recommend? And here they agreed to recommend a sentence between 96 and 108 months without reference to whether that was below within above the guidelines. That was the range. And then the actual argument that the prosecutor made that Mr. Lopez's criminal history was underrepresented was an argument that in effect argued against the imposition of any downward variance, despite the government's promise to request a sentence that was a below guideline sentence. I think it's also important. Let me cancel. Let me just let me just ask you this. And looking at the transcript, it's after the government and the defendant presented their arguments, the court said, and I'm quoting transcript at 94, the government's asked me to sentence him to no more than 108. Why doesn't that show that the court didn't consider the request for 108 months to be mere lip service? Because I think we also have to look at what the arguments that the prosecutor actually made that Mr. Lopez's criminal history was underrepresented. And the court repeated those arguments as well, showing that the court considered the inappropriate. The court said that it had already noted that before the argument even started, didn't it? Well, the court so the court didn't mention criminal history under representation until after the prosecutor did. But the court did say that he had a note about that. He doesn't read and it was based on reading the pre-sentence report. So the court indicated that it had some concerns about Mr. Lopez's criminal history, but the court didn't say that it would have reached the same decision without the government's position, cementing the court's thinking with the weight of the government's recommendation behind it. But the government also believed that Mr. Lopez's criminal history was that is that is that the test? Is that the test on plain air that the court had to say that on the record? No, I think that's relevant when we're talking about whether or not a breach affected Mr. Lopez's substantial rights. I think we can look at what the court considered and whether the court considered the inappropriate argument. Two more aspects of the prosecutor's argument, I think, are key here, which is this was the prosecutor's only argument about the appropriate sentence. So the only thing that he said about the sentence that should be selected was that Mr. Lopez's criminal history was underrepresented, followed by reasons why he believed that it was underrepresented. So he gave no reasons. The government was silent about any reason supporting the below guidelines 108 month sentence that it had agreed to request. Well, it says repeatedly that it had agreed to that to that sentence, 108 or rather 96. I mean, it's it's stated the amount of sentence that it had agreed to. In the very argument that was. That was also true in Cachuca, the prosecutor in Cachuca said multiple times he requested the sentence that the government had agreed to in the plea agreement. But this court looked at the substance of the arguments that the prosecutor actually made. And those arguments were arguments that the guidelines range was too low and that the guidelines range didn't make sense. So this court said that the prosecutor just paying lip service to the agreement and formally making the request that it had agreed to didn't insulate the government from a finding of breach when its actual arguments, in effect, argued against the agreed upon range. Do we do we look at that? Do we look at all and consider the fact that the court, in fact, interrupts the prosecutor and says, yes, I'm looking at that, too. I think that goes to the third prong of plain error, whether the breach affected Mr. Lopez's substantial rights. And I think it did. And three things I want to emphasize about that is, again, that the inappropriate argument about underrepresented criminal history was the only argument that the prosecutor made. So the prosecutor didn't actually give any reasons supporting any downward variance, despite the fact that it had agreed to recommend a sentence that was in a below guidelines range. And second, the court did say that it had a note about Mr. Lopez's criminal history, but the court didn't say that until after the prosecutor had invoked criminal history under representation. And I think we don't know if the district court would have came to the same conclusion without hearing the prosecutor's inappropriate argument. And the court repeated the prosecutor's reasons for why he believed that Mr. Lopez's criminal history was underrepresented, specifically talking about a number of unscored offenses, a number of unscored violent offenses. So the record at least gives some indication that the court considered the prosecutor's argument when selecting the sentence. Well, Ken, in this situation, can the prosecutor say anything? Does the prosecutor just have to stand up and say, Your Honor, I propose the sentence of one hundred and eight months and then sit down? Absolutely not. Of course not. I mean, the prosecutor could have talked about Mr. Lopez's criminal history and could have even talked about his view that Mr. Lopez's criminal history was serious without invoking criminal history under representation. It's the underrepresentation argument that is the problematic argument here, because as as I've said, that is necessarily an argument against the imposition of any downward variance. I don't think it makes sense in any case to say, I think this defendant's criminal history is underrepresented and that's why I think you should give him a downward variance. I think those things don't that doesn't make sense. So the prosecutor could have said quite a lot about Mr. Lopez's criminal history without invoking criminal history under representation. And that, I think, would not have been a breach. But he was entitled to respond to the request for ninety six months. And, you know, isn't he allowed to make a pitch for, you know, it shouldn't be ninety six months. It should be what we agreed to hundred eight. And the reason for that is it was the criminal history was unrepresented, but we still stand by our agreement of one away. So I want to answer this and then I want to reserve the remainder of my time. So the prosecutor, of course, was entitled to respond to the request for ninety six months. But I think what the prosecutor was not entitled to do was respond to that request in a way that in effect argued against the agreed upon range as a whole and suggested that the agreed upon range as a whole was too low, which is precisely what an argument about criminal history under representation. So in the context here, the language used by the prosecutor was was loaded against the defendant. Absolutely. I think loaded against the imposition of a downward variance, which was what the parties, the range of the parties agreed upon. You may reserve the rest of your time. Mr. Wynn, you're up. You may proceed. Good afternoon, Your Honors, and may it please the court. Connor Wynn for the United States. As Mr. Lopez just discussed with this court, context is key here. It's important when examining the sentencing transcript in this case to take a full view of of the events that had led up to that sentencing colloquy and the specific statements that both the prosecutor and the district court were making in that colloquy. When you do that, it's clear here there was no air. There certainly was no plain air, and there was certainly no plain air that have substantially affected Mr. Lopez's rights. This court should affirm the sentence in judgment. Now, to talk about that context, I want to start with what the government and Mr. Lopez both agree upon. We both agree that the government was allowed here to respond to Mr. Lopez's recommendation, but the district court sentenced him to 96 months. We both agree that one of the ways the government could do that was by discussing was by discussing Mr. Lopez's criminal history during its argument to the district court. Where we disagree is over what the government did with that criminal history. Mr. Lopez used the government's remarks as an improper and subversive attempt to pay lip service to the plea agreement, while in fact trying to convince the district court in a sinister manner to exceed the got to exceed the sentencing range codified in the plea agreement. But when you look at what the prosecutor said in his opening remarks in the sentencing colloquy, it becomes clear explicitly clear that that's not the case. The prosecutor opened his statement by saying that he wanted to request a sentence of 108 months. And he specifically told the district court, I want to make clear that what I'm about to say what is coming after this is in no way intended to deviate from that 108 month sentence. Well, what that tells you is that the criminal history argument coming forward is in fact not an argument for an upward variance in any manner. In fact, the prosecutor is telling you this criminal history argument is going to be in support of that 108 month sentence. Well, some of our cases do suggest that, you know, a lukewarm advocacy or, you know, kind of a tricky rebuttal to the defendants argument can be the basis for a breach of these agreements and, you know, we're looking at a cold transcript here but you can imagine a situation where, you know, you throw in some body language like rolling rolling your eyes or you wink at the judge. When you're or shake your head when you're advocating for the 108 month sentence. So, you know, it seems to me that this, this case, you know, can't can't fit in with the legal framework that your colleague was that was advocating for. And, you know, why, you know, here, he didn't have to, he didn't have to say anything. I mean the prosecutor could have rested on their representation, but he went further. Your Honor, we agree that the prosecutor here wasn't bound to say anything, he could have just requested to the district court, a sentence of 108 months, but the plea agreement also didn't prohibit him from saying anything. In fact it explicitly left open to the prosecutor. And you can see this on there, are there plea agreements in your district that were the government agrees to, you know, be mute. There are plea agreements where the government explicitly agrees to say for example, a specific drug quantity, there can be a stipulation the plea agreement that the drug amount found was x. And in that case that effectively precludes a prosecutor from arguing that drug weight may have been something else that sentencing. So that would be an example of a plea agreement that can in fact go ahead and constrain across the actual arguments of prosecutor. But, but he's asking if there are agreements where the prosecutor agrees to say nothing. Stand mute. Your Honor, I think I have never seen such an agreement I do think one could be struck. I think there could be a provision included in a plea agreement that says the prosecutor will request a sentence of x, and then advance no argument in favor of that sentence. I don't know that the government would ever have an incentive to do that. But if the government thought it was to its benefit and was amenable to striking such an agreement with the defendant. I think that's allowable. That contract could be reached. Isn't there a material difference between on the one hand, the prosecutor getting up and saying, Your Honor, we think this sentence should be 108 instead of 96 because of Mr. Lopez's criminal history. That'd be one way to bring the criminal history in. That isn't what he did. Instead, he says the criminal history is such that the category five for criminal history doesn't reflect his actual criminal history. So he shifts the argument over to a guidelines type discussion. And the guideline is 120. Seems like those two possibilities are not the same. And by arguing the latter, that why is that compliant with the with with the plea agreement? Judge Matheson, I have three points in response to your question here. And the first one goes back to context, like I was mentioning earlier, while the prosecutor doesn't explicitly state during his colloquy with the district court that he's invoking this criminal history to abut the 96 month recommendation that Mr. Lopez has made. And that's apparent both to the district court and to Mr. Lopez at that point in time, because Mr. Lopez has already submitted a sentencing memorandum to the district court specifically requesting that 96 month sentence. It's important to remember that none of the sentencing proceedings here occurred in a vacuum. All of these events were progressing and building upon one another. So by the time that the sentencing colloquy, an argument between the prosecutor and the district court rolled around, everyone's aware of what Mr. Lopez's sentencing position is. In fact, during the resolution of the objections, the pre-sentence report, a little while earlier, Mr. Lopez indicates his intention once again to move for a downward variance. It's clear his position hasn't changed. And it's in that context that the prosecutor turns to criminal history, which, leading to my second point, is an appropriate factor to consider and argue about in terms under 18 U.S.C. 3553A when evaluating what a sentence should be and for selecting the 108 month figure over the 96 month figure. That's clear from this court's opinion in, for example, Yanez Rodriguez, where the prosecutor is discussing criminal history, or Rodriguez Barbosa, an unpublished opinion from this court in 2019, where a prosecutor engages in a similar sort of discussion. And then the third point, Judge Mathison, is even if there is some sense in which the prosecutor's language here might have been inartful in discussing the underrepresentation of criminal history, that's not the stuff of plain air. And that is what Mr. Lopez needs to demonstrate here. He needs to demonstrate that the prosecutor's appeal to criminal history, rather than being a permissible invocation of a 3553A factor, was in fact a subversive attempt to pay lip service to a plea agreement. Well, you keep referring to things like subversive attempt. I'm not so concerned with what the intent that the prosecutor was. What's important is what he said. And what he said was more than inartful. He went to a technical term from the sentencing guidelines, that is the criminal history category, rather than, I mean, no one's disagreeing with your first two points. Number one, that Mr. Lopez was going to argue for 96 months. Why wouldn't he argue for, he's not going to argue for more than 96 months. And secondly, that the prosecutor can talk about criminal history. It's the fact that he moves to the sentencing guideline terminology and saying that the criminal history category, that's an unrepresentative number. And I guess I'm just not understanding why that is different from just saying, judge, the criminal history supports 108 months. I take your plain error. I understand your plain error argument. And I think that's really where this case is going to be resolved. But it does seem to me that the prosecutor did go a little too far. Your Honor, specifically given your allusion to plain air and what you've just said about that will be where this case may be resolved. And then in that case, I want to draw this court's attention to its unpublished decision in Rodriguez Barbosa, which is an extremely similar case. In fact, being reviewed for plain air. And there, this court found... And that's cited in your brief. That's correct, Your Honor. And Rodriguez Barbosa, there were five points that this court found persuasive in concluding there was no plain air in that situation there. And at least four of them are specifically relevant here. First, there's no question that the government led with its recommendation that comported with the plea agreement and that it returned to that recommendation. That's the same here. The government specifically affirmed its intent for a 108-month sentence no less than three times within its two pages of transcript that forms the basis of its colloquy here. Second, the information that the government drew the district court's attention to was already contained in the PSR and readily available to the district court. That was true in Rodriguez Barbosa. That's again true here. Third, it's clear that both in Rodriguez Barbosa and in this case, the district court received the message that the government was sending. The district court specifically in its interactions with the government during the government's argument and in the sentencing colloquy it eventually delivered when sentencing Mr. Lopez specifically referenced the fact that the government had requested a sentence of 108 months. And it said that and that was requesting a sentence in concurrence with the range established in the plea agreement. That was relevant in Barbosa. Once again, that's relevant here. And then the fourth factor that proved dispositive in Barbosa was the fact that the case was being reviewed for plain air. The court said that it was a close call and that if it weren't plain air, that may have led to a different outcome to the extent this court thinks that it's a close call. Plain air counsels in favor of once again affirming Mr. Lopez's sentence and the judgment here. But I want to talk a little bit about the third prong of substantial of plain air review, which was briefly mentioned a little while ago. And that's specifically relevant because the district court had already caught on to the fact that the PSR's calculation of Mr. Lopez's criminal history category underrepresented his criminal history in this case. As was noted a little while ago during argument, the district court, in fact, interrupted the government to say, yes, I'd caught that, too. I made a note of that fact. And then in its colloquy, as it began to sentence Mr. Lopez, it once again referred to the fact that it had noted that the PSR's criminal history category calculations were underrepresented with regards to Mr. Lopez's history. This was already on the district court's mind. And not only that, the district court went ahead and you can actually see counted the number of paragraphs summarizing Mr. Lopez's criminal history. It took the time to sit there, presumably before the sentencing hearing began, and was noting in detail and analyzing the criminal history that Mr. Lopez had. The government wasn't telling the district court anything it didn't already know. I think there's one other thing, two other points that I'd like to make based on the argument that Mr. Lopez advanced just a moment ago. Opposing counsel stated that the only argument that the government advanced in favor of the 108-month sentence here was his criminal history. It's actually not quite correct. On volume three, page 122 of the record, the government, before moving into his criminal history, actually notes the facts of this case. It notes the totality of the facts and the fact that there were five stops involving firearms. So before even moving to the criminal history, the government was basing its argument on other factors in terms of why the 108-sentence was appropriate. And then the second thing that I'd like to address, there was some discussion of this court's decision in United States v. Kachuka. First off, that was a case being reviewed de novo, not plein air review. Second, what happened in Kachuka was significantly more egregious than anything that happened here. There, the prosecutor said that the sentence recommended by the sentencing guidelines was incredibly too low, way too low. There was no need for the sort of wink and nods that Chief Judge Timkovich was talking about earlier. The sentencing transcript was entirely plain what the prosecutor thought of the sentence that he was being required to recommend in conformance with the plea agreement was. He went on an extended colloquy, much longer than anything else that occurred here, and specifically critiqued an earlier version of the guidelines and informed the district court that they were no longer in effect because the sentencing commission had the same problem that the prosecutor had with that earlier version of the guidelines. For those reasons, Kachuka is just worlds apart from what happened in this case. If there are no further questions from the panel, the government is happy to rest on its briefs. Thank you, counsel. And we had a little bit of rebuttal time for Miss Gassman. Just want to try to make a few points. So first of all, I want to reiterate Judge Matheson's point. We're not suggesting that the prosecutor was doing something nefarious here. I don't think that we have to show that. I think what matters is what he said and what that meant. Second, the government relies heavily on arguing that this was a response to Mr. Lopez. Mr. Lopez never made any arguments about criminal history. He had made a variance argument based on the amount of enhancement attributed to an inoperable gun, but he never discussed criminal history. So this was not directly responsive to any arguments that he made. I do think this court's opinion in Rodriguez-Barbosa is important here. We have extensively discussed it in our reply, but I think that it cuts the other way here. So the court in Rodriguez-Barbosa did find a breach. I think that's important that the court assumed a breach, but found that it wasn't plain. And a big part of that was because the prosecutor's discussion about the guidelines range and saying that perhaps it maybe didn't make sense. The court found that that was also in the context of explaining the case because it was an illegal reentry case where the defendant had received a higher sentence previously for the same offense. And his guidelines range in the current case was lower. And the prosecutor was, in part, explaining that to the court so the court would understand why probation's recommendation was a lower sentence because it was a within guideline sentence and the guidelines had changed. Here, there was nothing about the prosecutor's argument that Mr. Lopez's criminal history was underrepresented. It served any purpose to explain anything to the judge. Its only purpose was to, in effect, argue for a higher sentence than the below guidelines range that the parties agreed to. Counsel, in this case, are you seeking to withdraw the plea? No, Mr. Lopez does not seek to withdraw his plea. But you're arguing this is a plea agreement, which is a contract, and you're saying the contract is breached, right? Correct. And this court's case law is very clear that the defendant has the choice to elect between withdrawal of the plea or resentencing in front of a different judge. If the government breaches the plea, and Mr. Lopez does not seek to withdraw the plea, so he requests the remedy of resentencing in front of a different judge. Are there no further questions? All right, Counsel Lange, thank you for your participation. I think we understand your arguments. You're excused. The case is submitted.